UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRIN W. SHATNER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12-cv-861 |
| WARDEN MARCUS HARDY, | ) Judge John W. Darrah |
| L.P NURSE DANIELLE ERICKSON, | ) |
| DR. P. GHOSH, and DR. SCHAEFER, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrin W. Shatner ("Plaintiff" or "Shatner") filed a Complaint against Defendants Warden Marcus Hardy, L.P. Nurse Danielle Erickson, Dr. Parthasarathi Ghosh, and Dr. Ronald Schaefer, asserting various claims regarding the medical treatment Plaintiff received for seizures while in prison. On May 23, 2014, Hardy filed a Motion for Summary Judgment on all counts against him. The remaining Defendants filed for summary judgment on June 20, 2014. For the reasons set forth more fully below, Defendants' Motions for Summary Judgment are granted.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule

56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment. Local Rule 56.1(b)(3)(C) further permits the nonmovant to submit a statement "of any additional facts that require the denial of summary judgment . . . ." To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

If a responding party does not comply with Rule 56.1, "additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey, Illinois*, 585 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817.

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Shatner has been an inmate in the Illinois Department of Corrections since May 19, 1993. (Dkt. 99, ¶ 1.) Shatner has had seizures since he was a child and has taken Dilantin, phenobarbital, and Klonopin to treat them. (Dkt. 102, ¶ 1.) Shatner took phenobarbital for his seizures but went off of the medication in 1997 or 1998. (Dkt. 99, ¶ 43.) Shatner was first placed on Klonopin when he arrived in Stateville Correctional Center in 2003 or 2004. (*Id.* at ¶

2

42.) The current Complaint concerns events which occurred at Stateville between August, 2010 and October 2010. (Dkt. 87, ¶¶ 1, 5).

Hardy was Warden at Stateville from December 2009 to December 2012. (*Id.* at ¶ 1.) In August 2010, Dr. Schaefer was a staff physician at Stateville. (Dkt. 99, ¶ 3.) Dr. Schaefer's primary duties consisted of seeing inmates in the prison's clinics, including clinics for chronical medical conditions such as seizures, diabetes, hypertension, tuberculosis, asthma, and also general medicine. (*Id.*) Dr. Ghosh was the medical director at Stateville from 2003 until March 2011. (*Id.* at ¶ 4.) Nurse Erickson was employed as a licensed practical nurse at Stateville from June 2010 to March 2012. (*Id.* at ¶ 5.)

Dr. Schaefer saw the Plaintiff in the seizure clinic at Stateville on August 31, 2010. (*Id.* at ¶ 8.) This was the only encounter Dr. Schaefer and the Plaintiff had. (*Id.*) At that visit, Dr. Schaefer decided to not renew Plaintiff's prescription for Klonopin because, in his medical opinion, it was not a good medication for someone with seizures to be on and other medications were available. (*Id.*) Klonopin is not a common treatment for seizures; other more common medications are Dilantin, Tegretol, and Depakote. (*Id.* at ¶¶ 10-11.) Plaintiff did not want to take other seizure medication, so Dr. Schaefer decided to continue the Klonopin prescription for two months, not renew the prescription, and permit a follow-up. (*Id.* at ¶¶ 12-13, 18.) Abrupt withdrawal from Klonopin can cause a seizure, and medical literature suggests that patients should be weaned off Klonopin. (Dkt. 102, ¶ 19.) Dr. Schaefer does not recall whether he asked Plaintiff if he had tried other medications and what the results were. (*Id.* at ¶ 13.) Shatner accused Schaeffer of trying to kill him. (Dkt. 99, ¶ 14.)

Schaeffer makes his decision for seizure clinic patients based on what he believes is the healthiest way to manage seizures. (*Id.* at ¶ 22.) Schaeffer made the decision not to renew

3

Plaintiff's Klonopin based on his medical judgment and evaluation of Shatner and his clinical evaluation of Shatner. (*Id.*) Shatner did not ask Dr. Schaefer to put him on another medication after the Dr. Schaefer decided not to renew the Klonopin prescription. (*Id.* at ¶ 51.) Plaintiff never put in for a formal sick call request, a request to be seen by medical staff at any time for an illness, following his appointment with Dr. Schaefer. (*Id.* at ¶ 28, 50.)

Dr. Ghosh did not work in the Stateville seizure clinic on a regular basis and had no involvement with Shatner's visit with Dr. Schaefer on August 31, 2010. (*Id.* at ¶ 26.) Dr. Ghosh was not required to review and approve Dr. Schaefer's orders for inmates, and he would not routinely review Dr. Schaefer's charts. (*Id.* at ¶ 23.) Dr. Ghosh has very rarely prescribed Klonopin for seizures as it is not a preferred drug by practitioners. (*Id.* at ¶ 27.) Plaintiff believes Dr. Ghosh was retaliating against him for a lawsuit that Plaintiff filed against Dr. Ghosh, but has no evidence or basis for this belief. (*Id.* at ¶ 58.) Plaintiff simultaneously believes that Dr. Ghosh conspired to have him taken off Klonopin but also that Dr. Ghosh kept Plaintiff on Klonopin to avoid a lawsuit. (*Id.* at ¶ 60.)

Plaintiff was transferred from Stateville to Menard on October 20, 2010. (*Id.* at ¶ 52.) Nurse Erickson completed the transfer sheet for Plaintiff's transfer to Menard. (*Id.* at ¶ 30.) At the time she completed the transfer sheet, Nurse Erickson did not have access to Plaintiff's medical records. (*Id.*) Nurse Erickson only had access to Plaintiff's then-current orders for medication. (*Id.*) Medical records for inmates are boxed up at least one week in advance of an inmate's transfer. (*Id.* at ¶ 31.) Nurse Erickson understood that Klonopin was used for anxiety and used for seizures only on a short-term, emergency basis. (*Id.* at ¶ 32.) Nurse Erickson had never heard of Klonopin being prescribed for seizures and had no knowledge that Plaintiff had

4

been prescribed Klonopin for seizures. (*Id.*) Nurse Erickson noted "anxiety" on the Plaintiff's transfer sheet so that Plaintiff could have a follow-up with the psych department at Menard. (*Id.* at ¶ 33.)

Shatner went through a medical intake screening when he arrived at Menard, and told the intake nurse he was supposed to receive seizure medications such as Klonopin and Benadryl. (*Id.* at ¶ 54.) The nurse informed Shatner they were not going to give him Klonopin and he filed a grievance. (*Id.*) Plaintiff claims to have suffered eight seizures while at Menard. (*Id.*) Shatner was scheduled to see a doctor two to three weeks after he arrived at Menard, but the appointment was rescheduled for November. (*Id.* at ¶ 56.) After that appointment, Plaintiff was placed back on Klonopin. (*Id.*)

Shatner is currently taking Klonopin for seizures. (*Id.* at ¶ 38.) Shatner also has a back condition, which doctors have told him is a sciatic nerve. (*Id.* at ¶ 37.) Plaintiff claims that this injury occurred when he suffered a seizure in November 2010. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving

party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' . . . it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 252, 248-49 (1986)).

## ANALYSIS

*Count I*

In Count I, Plaintiff alleges that Hardy showed a willing and malicious intent of deliberate indifference to his health and safety. Specifically, Shatner alleges that Hardy was responsible for the actions of the Correctional Security Staff assigned to Shatner's unit. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, (1976)). Further,

> [i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Id.* at 656 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

6

Plaintiff alleges that he was not taken to his appointments at the Seizure Clinic on August 20, 2010, August 25, 2010, and August 27, 2010. However, Shatner presents no facts to show that Hardy was responsible for the Correctional Security Staff assigned to Shatner's unit. Nor does he present any facts to show that he even had appointments at the Seizure Clinic on August 20, 2010, August 25, 2010, and August 27, 2010. Hardy's Motion for Summary Judgment is granted as to Count I.

*Count II*

In Count II, Plaintiff alleges that Hardy showed a willing and malicious intent of deliberate indifference to his health and safety. Specifically, Shatner alleges that Hardy was responsible for the actions of the nurses assigned to issue medication to prisoners. Plaintiff alleges that those nurses showed a complete disregard for Plaintiff's health and suffering. Presumably this is because Plaintiff believes that the nurses stopped giving him Klonopin in August 2010, though he does not specifically allege this.

The only fact presented to support this claim is Shatner's testimony that his August 31, 2010 appointment with Dr. Schaefer was due to the nurses failing to dispense his medication every day. (Dkt. 106, ¶ 2.) Even if this is true, Shatner points to no facts to show that Hardy had supervisory capacity over the nurses or that he was not justified in believing Plaintiff was in capable medical hands. Further, Shatner admits that he continued to receive Klonopin until he was transferred. (Dkt. 102, ¶ 5.) Plaintiff filed two grievances after being transferred to Menard. (*Id.* at ¶¶ 52, 53.) The second of these grievances complained that Dr. Schaefer, Dr. Ghosh, and Hardy were trying to kill him by taking Plaintiff off of Klonopin and transferring him to Menard.

7

(*Id.* at ¶ 53.) However, Plaintiff cites to no facts to show that Hardy had any control over the distribution of medication at Menard. Hardy's uncontroverted facts state that he had no responsibility for the medical care of inmates transferred from Stateville to Menard. (*Id.* at ¶ 42.)

Because Plaintiff continued to receive Klonopin while at Stateville, and because Hardy has no control over medication at either Stateville or Menard, Hardy's Motion for Summary Judgment is granted as to Count II.

### *Count III*

In Count III, Plaintiff alleges that Hardy and Dr. Ghosh showed a willing and malicious intent of deliberate indifference to his health and safety by failing to properly supervise the staff responsible for issuing medications. Plaintiff alleges that he wrote to both Hardy and Dr. Ghosh advising them of missed Seizure Clinic appointments and the nursing staff not delivering his medication.

Shatner provides no facts to show that Hardy was notified of missed Seizure Clinic appointments or non-delivery of his medication. Plaintiff believes that Dr. Ghosh was retaliating against him for a lawsuit that Plaintiff filed against Dr. Ghosh, but admits that he has no evidence or basis for this belief. (Dkt. 99 at ¶ 58.) Plaintiff's assertion that "someone, possibly Hardy or Dr. Ghosh" received a letter regarding his medication "and continued Shatner's prescription of Klonopin rather than quickly cut if off as per Dr. Schaefer," (Dkt. 97, p. 8), is completely unsupported by the record and wholly speculative. "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (Emphasis in original.) *Tyler v. Runyon*, 70 F.3d 458, 469 (7th Cir. 1995). Shatner has not shown evidence such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh*, 259 F.3d at 625.

As Plaintiff has presented no facts to show that Hardy or Gosh failed to properly supervise the staff responsible for issuing medications, Defendants' Motions for Summary Judgment are granted as to Count III.

*Count IV*

In Count IV, Plaintiff alleges that Dr. Schaefer showed deliberate indifference to his pain and suffering. Specifically, Plaintiff claims that discontinuing Klonopin and the failure to properly discontinue Klonopin by weaning him off the drug and/or providing an alternative drug showed deliberate indifference to his health.

As mentioned above, "[p]rison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno*, 414 F.3d at 652-53 (quoting *Estelle*, 429 U.S. at 104). Plaintiff must satisfy two elements to prove a deliberate indifference claim: one objective and one subjective. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). For the objective element, Plaintiff must show that he had an objectively serious medical need. *Id.* "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). For the subjective element, Plaintiff must show that Defendants "were aware of his serious medical need and were deliberately indifferent to it." *McGee*, 721 F.3d at 480.

Deliberate indifference requires more than negligence or even malpractice. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a

9

departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles v. Fahim*, No. 14-1752, 2014 WL 5861515, at *5 (7th Cir. Nov. 13, 2014) (citing *Roe*, 631 F.3d at 857; *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)).

It is undisputed that Schaeffer made the decision not to renew Plaintiff's Klonopin based on his medical judgment and evaluation of Shatner and his clinical evaluation of Shatner. (Dkt. 99, ¶ 22.) Both Dr. Schaefer and Dr. Ghosh have stated that Klonopin is not a common treatment for seizures. (*Id.* at ¶¶ 10, 27.) Nurse Erickson also stated that she understood Klonopin was used for seizures only on a short-term, emergency basis and had never heard of Klonopin being prescribed as a treatment for seizures. (*Id.* at ¶ 32.) Shatner objected to the use of any other medication beside Klonopin at his appointment with Dr. Schaefer and did not ask Dr. Schaefer to put him on another medication after the Klonopin prescription was not renewed. (*Id.* at ¶¶ 18, 51.) A disagreement about a particular course of medical treatment does not amount to deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Plaintiff also claims that the failure to properly discontinue Klonopin by weaning him off the drug and/or providing an alternative drug showed deliberate indifference to his health. As previously stated, Shatner objected to using any medication other than Klonopin. (*Id.* at ¶ 18.) Further, Shatner admits that he continued to receive Klonopin until he was transferred. (Dkt. 102, ¶ 5.) Deliberate indifference only occurs when "defendants [have] the power to do something about his condition, which is to say until he left the jail." *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). After Shatner's transfer, Dr. Schaefer had no control over Plaintiff's medical care.

Dr. Schaefer made the decision to take Plaintiff off Klonopin based on his medical judgment and evaluation of Shatner. Even so, Shatner received Klonopin until he was transferred; after that, Dr. Schaefer no longer treated Plaintiff. Plaintiff has not produced evidence such that a reasonable jury could return a verdict in his favor. Defendants' Motions for Summary Judgment are granted as to Count IV.

*Count V*

In Count V, Plaintiff alleges that Hardy conspired with the Stateville Correctional Center medical staff to transfer Plaintiff to another prison. Shatner alleges that this conspiracy occurred in direct retaliation for his verbal and written statements that he was being denied medical treatment due to lawsuits pending against Dr. Ghosh and other staff. Plaintiff has presented no facts to show the existence of a conspiracy between Hardy and others. Hardy's uncontroverted statement of facts indicated that he did not know why Plaintiff was transferred to Menard and did not generate the form to transfer Plaintiff. (Dkt. 87, ¶¶ 44, 46.)

As Plaintiff has presented no facts to support a conspiracy, Defendants' Motions for Summary Judgment are granted as to Count V.

*Count VI*

In Count VI, Plaintiff alleges that Nurse Erickson did not properly note his long term seizure disorder in his medical transfer summary, which caused him to go many weeks without seizure medications. He further alleges he suffered several seizures at Menard that caused bodily injuries.

Plaintiff must show that Defendants "were aware of his serious medical need and were deliberately indifferent to it." *McGee*, 721 F.3d at 480. Nurse Erickson stated that she understood Klonopin was used for seizures only on a short-term, emergency basis and had never

11

heard of Klonopin being prescribed as a treatment for seizures. (Dkt. 99 at ¶ 32.) Nurse Erickson did not have access to Plaintiff's medical record but only had access to Plaintiff's then-current orders for medication. (Id. at ¶ 30.) Shatner does not allege that the failure to include his seizure disorder was anything other than inadvertent. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." (Internal quotations omitted.) *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). And again, once Plaintiff left Stateville, Nurse Erickson had no control over his medical treatment and could not have been deliberately indifferent. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001).

Plaintiff has not produced evidence such that a reasonable jury could return a verdict in his favor. Defendants' Motions for Summary Judgment are granted as to Count VI.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motions for Summary Judgment [85, 90] are granted. Judgment is entered in Defendants' favor, and the civil case is closed.

Date:     January 28, 2014

JOHN W. DARRAH
United States District Court Judge